UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-12208-RGS

MELISSA JACKSON and MARTA MEDA

v.

NEW ENGLAND BIOLABS, INC., PERSONAL REPRESENTATIVE OF
DONALD COMB, JAMES V. ELLARD, RICHARD IRELAND, and the
COMMITTEE OF NEW ENGLAND BIOLABS, INC. EMPLOYEES' STOCK
OWNERSHIP PLAN,
Defendants

NEW ENGLAND BIOLABS, INC.
NON-VOTING STOCK OWNERSHIP PLAN
Nominal Defendant

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS

April 3, 2024

STEARNS, D.J.

Plaintiffs Melissa Jackson and Marta Meda are former employees of defendant New England Biolabs, Inc. (NEB). Plaintiffs participated in the New England Biolabs, Inc. Non-Voting Stock Ownership Plan (the Plan) beginning in 1996 and 1986, respectively. The dispute concerns amendments made to the Plan in 2019 (2019 Amendment). Before the 2019 Amendment, the operative Plan document (2013 Plan Document) permitted

participants, including former employees, to defer distributions of their accounts until age 65. But on August 1, 2019, NEB amended the Plan to automatically convert to cash any NEB shares allocated to former employees. The compulsory divestments occurred the next month.

Plaintiffs, who represent a putative class of Plan participants, allege seven violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.: engaging in prohibited transactions in violation of ERISA §§ 406(a) and 406(b), 29 U.S.C. § 1106 (Counts I and II); breach of fiduciary duty in violation of ERISA §§ 404(a)(1), 29 U.S.C. § 1104, for failing to properly investigate the fair value of plaintiffs' shares, improperly implementing the 2019 Amendment, and failing to monitor the Trustee and Committee Defendants (Counts III and VI-VIII); and cutting back Plan benefits in violation of ERISA § 204(g), 29 U.S.C. § 1054 (Count V). Counts I and VIII are alleged against Donald Comb, James Ellard, and Richard Ireland (Trustee Defendants), and NEB. Counts II, IV, V, and VII are alleged against only NEB. Counts III and VI are alleged against the Trustee Defendants and the Committee of the Plan and its members, who are also the Trustee Defendants (collectively, Committee Defendants). Plaintiffs seek monetary and equitable relief, including a declaration that the 2019 Amendment was invalid and an injunction

restoring administration of the Plan in accordance with the terms of the 2013 Plan Document (Count IV).

Defendants now move to dismiss all counts against them, contending that plaintiffs lack standing and that the Amended Complaint fails to state a claim upon which relief can be granted. The court will allow the motion in part and deny it in part.

## BACKGROUND

Before the adoption of the 2019 Amendment, the 2013 Plan Document controlled the Plan. The 2013 Plan Document required the Committee to create two accounts for each Plan participant: an Employer Stock Account, which held all NEB stock distributed to a participant, and a Dollar Account, which held all other investments. The Document called for the distribution of participants' accounts no later than 150 days after the end of the Plan Year in which they retired, although the participant could elect to defer distribution until they reached age 65. Dkt. # 45-1 (Plan) Art. 8.3(a). The Plan Year ran from October 1 to September 30. *Id.* Art. 2.10.

The default form of distribution from both types of accounts was cash, but a participant could request the withdrawal of the whole shares in their Employer Stock Account. *Id.* Art. 8.1. If a participant elected a cash distribution, the shares in their Employer Stock Account were converted to

cash based on their value as of the last day of the Plan Year preceding the termination of the participant's employment. *Id.* Art. 8.3(a). To calculate the value of Employer Stock Accounts, NEB used the value as of the "last business day of [the preceding] month in the Plan Year." *Id.* Art. 2.15.

The Plan gave the Trustee Defendants authority to determine the fair market value of NEB stock. *Id.* Art. 6.4. And in doing so, the Trustee Defendants were permitted to rely on "the report of an independent appraiser or appraisal firm." *Id.*; Am. Class Action Compl. (FAC) (Dkt. # 31) ¶ 47. In 2016-2019, the Trustee Defendants retained Berkeley Research Group (BRG) to appraise NEB's stock. BRG never made presentations to the Trustees, Comb (the Chairman of the NEB Board, a Committee member, and Trustee) never discussed the valuation with any other Trustee, and the Trustees had no substantive discussions about BRG's methodology, assumptions, or conclusions. FAC ¶¶ 89-94. Nonetheless, the Trustee Defendants adopted BRG's valuation without question each year.

The 2013 Plan Document also contained put options.[1] The put options permitted a participant, within 60 days of their 60th or 65th birthday, to require NEB to purchase shares that "were distributed under Article 8" of the

---

[1] Put options allowed a Plan participant to "put" or sell stock back to NEB on specific dates.

4

Plan at their "fair market value." Plan Art. 9.1(a)(i), 9.2. Article 8 required a participant seeking a stock distribution to make a request in writing to the Committee. *Id.*

The 2019 Amendment added one provision to the Plan Document (Article 6.9) and amended several others. As relevant here, these changes (1) required liquidation of the Employer Stock Accounts of former employees who had elected to defer distribution of their accounts, and (2) eliminated the put options. FAC ¶¶ 54, 56. Article 6.9 required the Trustee Defendants to transfer, in cash, the fair market value of the participants' Employer Stock Accounts to their Dollar Accounts "as soon as practicable following the period for making an election to defer distribution." *Id.* The fair market value was determined "based upon the valuation as of the last day of the Plan Year preceding the date of such transfer." *Id.*

Meda retired in 2012, and Jackson retired in September of 2019. Both of their Employer Stock Accounts were converted to cash and transferred to their Dollar Accounts in September of 2019. The Dollar Accounts were distributed to plaintiffs in cash in September or October of 2019. The value of NEB stock held by the Plan had appreciated by 27% between September 30, 2018, and September 30, 2019. But because the 2019 Amendment was adopted before the end of the 2019 Plan Year, plaintiffs'

5

Employer Stock Accounts were liquidated using the considerably lower NEB share price as determined on September 30, 2018.

## DISCUSSION

**Standing**

The "irreducible constitutional minimum" in any federal case is that the plaintiff has standing, meaning (1) the plaintiff has suffered an "injury in fact," (2) the injury is "fairly traceable" to defendants' challenged conduct, and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 26 (1st Cir. 2007), quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992).  In reviewing a facial challenge to plaintiffs' standing, such as the one here, the court accepts as true all well-pleaded "jurisdictionally-significant facts . . . and addresses their sufficiency." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Defendants object only to plaintiffs' standing to challenge the 2019 Amendment's elimination of put options.  Defendants argue that plaintiffs suffered no consequential injury in fact because plaintiffs had taken no distributions of NEB stock before the 2019 Amendment was adopted.[2]

---

[2] Defendants also argue that plaintiffs lack standing because they are not "participants" in the Plan.  This argument, which would have once been referred to as a "statutory" or "prudential" standing argument, is better

6

Plaintiffs do not allege that they ever received (or even requested) a stock distribution under Article 8. It follows that they had no right to exercise the put options. Plaintiffs thus lack standing to challenge the loss of the put options.

**Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If the allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint will be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### (a) Counts I and II – Prohibited Transactions in Violation of ERISA §§ 406(a), (b)

Count I alleges that the Trustee Defendants and NEB engaged in prohibited transactions in violation of ERISA § 406(a). Section 406(a) prohibits a fiduciary of a plan from causing the plan to engage in the "sale or exchange . . . of any property between the plan and a party in interest" or the

---

characterized as a merits issue of whether plaintiffs "ha[ve] a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128-129 & n.4 (2014). Because the court concludes that plaintiffs lack Article III standing to challenge the elimination of the put options, it need not address this merits argument.

7

"transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."[3]  29 U.S.C. § 1106(a).  Count II alleges violations of ERISA § 406(b), which provides that a fiduciary may not:

> (1) deal with assets of the plan in his own interest or for his own account, (2) . . . act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

*Id.* § 1106(b).  As is apparent, the allegations for Counts I and II are materially identical.

Before making a cash distribution, the Trustee Defendants were required to convert the NEB shares into cash.  *See* Plan Art. 8.1(d).  But, according to plaintiffs, the Plan lacked sufficient liquidity in 2017, 2018, and 2019 to fund the conversion.  Thus, plaintiffs contend that NEB annually purchased employees' shares from the Plan to infuse the Plan with cash, which, if true, would constitute prohibited transactions.

Defendants credibly rebut this argument to the extent that it implicates the 2017 and 2018 fiscal years.  According to the Plan's 2016 and 2017 Forms 5500, it had ample cash on hand to make the cash distributions without any

---

[3] A "party in interest" is defined in ERISA as, *inter alia*, a fiduciary, or an employer whose employees are covered by an employee benefit plan, or an employee of such an employer.  29 U.S.C. § 1002(14).

8

sale of stock to NEB.[4]  *See* Mem. in Supp. of Mot. to Dismiss (Mot.) (Dkt. # 45) at 10.  Because plaintiffs' illiquidity allegations are the anchor of the prohibited transactions claims, it follows that the FAC does not plausibly establish that defendants engaged in prohibited transactions in 2017 or 2018.[5]

The FAC does, however, plausibly allege that the Trustee Defendants and NEB engaged in prohibited transactions in 2019.  Unlike 2017 and 2018, the Plan did not have sufficient cash on hand to make the distributions requested in 2019.  *See* FAC ¶¶ 70-72, 135.  The Plan thus had to look elsewhere for cash.  Defendants claim it "obvious" that a number of (unidentified) Plan participants elected stock distributions and exercised put options requiring NEB or the Trustee Defendants to repurchase stock.  Mot. at 6.  The court disagrees.

---

[4] Because NEB's Forms 5500 are publicly available and their authenticity cannot reasonably be disputed, the court may take judicial notice.  *See* Fed. R. Evid. 201(b)(2).

[5] Plaintiffs' argument that the Plan may have used "Dollar Accounts of current employee participants to pay for the stock of the 2017 and 2018 distributees," Pls.' Opp'n to Defs.' Mot. to Dismiss (Opp'n) (Dkt.# 49) at 10, is unavailing.  Until distributed, all Plan assets – including those allocated to participants' accounts – are Plan assets.  *See* 29 U.S.C. § 1103(a).  Reshuffling assets is thus not a prohibited transaction.  *See LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 262 (2008) (Thomas, J., concurring).

Even if participants who took stock distributions subsequently exercised put options, they could not have done so until after the Plan made the cash distributions. The FAC thus plausibly alleges that the Plan was too cash poor in 2019 to make all cash distributions, and that NEB purchased stock from the Plan in violation of §§ 406(a) and (b).

### (b) Counts III and VI-VIII: Breach of Fiduciary Duty

Plaintiffs claim that when their accounts were liquidated by the 2019 Amendment, they received a diminished value for the shares of stock in their accounts. This, they claim, implicates three breaches of fiduciary duty under ERISA § 404(a)(1): (1) the failure of the Trustee and Committee Defendants to investigate the fair market value of NEB shares; (2) the failure of the Trustee and Committee Defendants to adjust the valuation date of NEB's stock price before liquidating plaintiffs' accounts; and (3) the failure of NEB to properly oversee the Trustee and Committee Defendants. To successfully plead a breach of fiduciary duty under ERISA, plaintiffs must allege that defendants were fiduciaries, that they breached a fiduciary duty, and that this breach caused the Plan a loss. *See Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 109-110 (1st Cir. 2002); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 36 (1st Cir. 2018).

10

### Count III:  Failure to Investigate Fair Market Value

As noted, the Trustee Defendants hired BRG to appraise NEB's stock price.  The Amended Complaint alleges that the Trustee Defendants were required to review BRG's appraisal, that they failed to do so, and that this failure caused the NEB stock held by the Plan to be undervalued.  FAC ¶¶ 165-168.  Specifically, plaintiffs argue that BRG should have reduced or eliminated the marketability discount[6] that it applied when valuing NEB's stock because the put options had in effect created a market for NEB stock. *Id.* ¶¶ 107-110.  Defendants argue that plaintiffs are "simply wrong" because BRG did consider the put options and consequently applied a lower marketability discount.  Mot. at 16, citing Mot., Ex. F (Dkt. # 45-6) at 13.

In Count III, plaintiffs have plausibly plead a breach of fiduciary against the Trustee Defendants.  The Trustee Defendants are unquestionably fiduciaries as defined by § 404.  The Amended Complaint compellingly alleges that the Trustee Defendants failed to take account of the impact of the marketability discount on BRG's valuation of NEB stock.  Notably, defendants concede that "[t]here is continuing controversy surrounding the extent to which a lack of marketability discount should be applied in ESOP

---

[6] A marketability discount may be applied in valuing stock that has little to no active market presence because investors are likely to pay less for illiquid securities.

11

...

valuations." Mot. at 16, quoting Mot., Ex. G (Dkt. # 45-7) (alteration in original). It is reasonable, therefore, to assume that, had the marketability discount been lowered or eliminated, NEB's stock would have been appraised at a higher price. And as Counts I and II plausibly allege that NEB purchased NEB stock from the Plan in 2019, Count III adequately alleges that NEB purchased the stock at a discount, causing the Plan a loss.[7]

The Amended Complaint does not, however, state a claim against the Committee Defendants for failing to recalendar the valuation date. Article 6.9 of the 2019 Amendment required the Trustee Defendants to convert plaintiffs' stock "as soon as practicable following the period for making an election to defer." FAC ¶ 54. It also delegated to the Committee the power to call for a distribution at "such other times the Committee determines." *Id.* Article 6.9 did *not* permit the Committee to alter the "as soon as practicable" distribution date or to change the method of valuing the stock. *See id.*

Thus, whatever action the Committee Defendants undertook, plaintiffs' shares would have been valued at the 2018 price. If the Committee

---

[7] However, to the extent that plaintiffs argue that their shares were liquidated at an unfair price, this fails to allege an injury to the Plan and is not actionable, as plaintiffs indisputably failed to exhaust the Plan's claims process. *See Brotherston*, 907 F.3d at 39.

Defendants had called for an earlier distribution date, the shares would have been valued consistent with Article 6.9. And had the Committee Defendants scheduled a later distribution date, that date necessarily would have come after plaintiffs' shares were liquidated on the "as soon as practicable" date. In any event, the Plan benefitted from liquidating plaintiffs' shares at the 2018 price because the Plan bought the shares at a depressed price. While this may have caused a loss to plaintiffs, the Committee had a fiduciary obligation to the Plan as a whole, and not just to plaintiffs. *See Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 374 (D.C. Cir. 1989) ("Nothing in § 404 requires that one set of beneficiaries be favored over another.").

**Count VI: Implementation of the 2019 Amendment**

Count VI faults the Trustee Defendants for causing plaintiffs' NEB stock to be converted to cash based on a year-old valuation, as required by the 2019 Amendment. *See* FAC ¶ 211. Under Article 6.9, before conversion, the former-employee participants' shares were valued at the "fair market value of the stock based upon the valuation as of the last day of the Plan Year preceding the date of such transfer." *Id.* ¶ 54.

Plaintiffs do not allege that the Trustee Defendants violated Article 6.9, but they contend that the Trustee Defendants had a fiduciary duty to choose a valuation date more favorable to plaintiffs. *Id.* ¶ 210. This, however, would

13

have required the Trustee Defendants to ignore the unambiguous terms of the Plan document.[8]  The court, considering the same Plan, previously held that the fiduciaries had a duty to disburse benefits "in accordance with the terms of the plan."  *New Eng. Biolabs, Inc. v. Miller*, 2021 WL 11702966, at *3 n.4 (D. Mass. May 26, 2021), quoting *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 59 (1st Cir. 2014) (emphasis omitted).  The same is true here.[9]

### Count VII:  Failure to Monitor

Count VII is derivative of Counts III and VI; it alleges that NEB should have monitored the Trustee and Committee Defendants and, upon learning of their breaches of fiduciary duty, taken corrective action.  FAC ¶ 221.  Because plaintiffs plausibly plead an underlying breach of fiduciary duty against the Trustee Defendants for failure to investigate the fair market value of NEB stock, plaintiffs have adequately plead a failure to monitor theory.  *See Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 292 (D. Mass. 2008).

---

[8] Plaintiffs argue in their Opposition that the Trustees violated Article 6.9 "by paying fair market value of a year prior pursuant to *other* Plan terms which [Article] 6.9 overrode."  Opp'n at 30.  This is not what plaintiffs alleged in the Amended Complaint, nor do plaintiffs explain what relevant Plan terms Article 6.9 purportedly overrode.

[9] Count VI also alleges that the Committee Defendants breached their fiduciary duties by failing to reschedule the valuation date.  This Count fails for the same reason that Count III came up empty.

14

**Count VIII: Co-Fiduciary Liability**

A fiduciary may be liable for another fiduciary's breach of duty "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary," or "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a). Co-fiduciary liability is also derivative of an underlying breach. To the extent that plaintiffs have adequately plead breaches of fiduciary duty for Count III, the Amended Complaint adequately pleads co-fiduciary liability for the Trustee Defendants and NEB.

*(c)* *Count V: Violation of ERISA's Anti-Cutback Provision*

The court takes Count V out of turn because it informs the availability of the equitable relief sought in Count IV. ERISA's anti-cutback rule prohibits the "decrease[] by an amendment" of any "accrued benefit of a participant" in an ERISA plan. 29 U.S.C. § 1054(g)(1). ERISA's "rather circular[]" definition of accrued benefit is "the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at a normal retirement age." *Bonneau v. Plumbers & Pipefitters Loc. Union 51 Pension Tr. Fund*, 736 F.3d 33, 38 (1st Cir. 2013), first quoting *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744

(2004), and then quoting 29 U.S.C. § 1002(23)(A) (alterations in original).[10] In interpreting ERISA's anti-cutback rule, the court is guided by relevant Internal Revenue Service (IRS) regulations. *See Cent. Laborers' Pension Fund*, 541 U.S. at 746.

IRS regulations are clear that plan participants have no right to a "particular form of investment" (such as investment in employer stock). 26 C.F.R. § 1.411(d)-4(A-1)(d)(7). NEB thus did not violate the anti-cutback rule by eliminating plaintiffs' ability to hold NEB stock in the Plan. Nor does the liquidation of plaintiffs' accounts qualify as an unlawful cutback. Plaintiffs argue that their accrued benefits could only be distributed "if the applicable consent requirements are satisfied." *Id*. § 1.411(a)-11(c)(1). They posit that the loss of the "right to choose among a broad range of investment alternatives with materially different risk and return characteristics is a significant detriment" within the meaning of § 1.411(a)-11(c)(2)(i). Opp'n at 26, quoting Rev. Rul. 96-47, 1996-40 I.R.B. 7. While this may be true, plaintiffs had no right to choose among investment alternatives under the 2013 Plan Document. *See* Plan § 6.2. Having identified no unlawful cutback, Count V fails to limn an ERISA § 204(g) claim.

---

[10] The rule "does not ask whether benefits were 'earned.' Rather, it asks whether benefits have 'accrued.'" *Bonneau*, 736 F.3d at 39 (footnote omitted).

16

### *(d)   Count IV:  Relief Pursuant to ERISA § 502(a)(3)*

ERISA § 502(a)(3) permits a participant to bring a civil action "to enjoin any act or practice which violates a provision of" ERISA or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of" ERISA.  29 U.S.C. § 1132(a)(3).  "Appropriate equitable relief" in this section means "'those categories of relief' that, traditionally speaking (*i.e.*, prior to the merger of law and equity) 'were *typically* available in equity.'"  *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011), quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006).  The forms of relief sought under § 502(a)(3) – declaratory and injunctive relief – "obviously fall within this category."  *Id.* at 440.

The problem for plaintiffs is that they lack standing to pursue these forms of equitable relief.[11]  *See Lujan*, 504 U.S. at 562.  The only viable claims that plaintiffs have involve alleged injuries to the Plan.  The equitable relief that plaintiffs seek – a declaration that the 2019 Amendment is invalid as to them and an order requiring administration of the Plan consistent with the 2013 Plan Document – would redress injuries that plaintiffs, not the Plan,

---

[11] Although this argument was not raised by defendants, the court has an independent obligation to ensure it has subject matter jurisdiction to entertain a dispute.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

suffered. The incongruity between the injury the Plan suffered and the harm this equitable relief would redress is fatal to the plaintiffs' § 502(a)(3) claim.

## ORDER

For the foregoing reasons, defendants' motion to dismiss the Amended Complaint is <u>ALLOWED</u> as to Count III against the Committee Defendants; <u>ALLOWED</u> as to Counts IV, V and VI; <u>DENIED IN PART</u> as to Counts I and II; <u>DENIED</u> as to Count III against the Trustee Defendants; and <u>DENIED</u> as to Counts VII and VIII. The court hereby <u>DISMISSES</u> Count III as against the Committee Defendants and <u>DISMISSES</u> Counts IV, V and VI as against all defendants.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

