**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MELISSA JACKSON & MARTA MEDA,

*Plaintiffs*,

v.

NEW ENGLAND BIOLABS, INC., PERSONAL REPRESENTATIVE OF DONALD COMB, JAMES V. ELLARD, RICHARD IRELAND, COMMITTEE OF NEW ENGLAND BIOLABS, INC. EMPLOYEES' STOCK OWNERSHIP PLAN,

*Defendants*,

*and*

NEW ENGLAND BIOLABS, INC. NON-VOTING STOCK OWNERSHIP PLAN,

*Nominal Defendant*

Civil Action No. 1:23-cv-12208-RGS

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES & REIMBURSEMENT OF LITIGATION EXPENSES**

# TABLE OF CONTENTS

INTRODUCTION ... 1

BACKGROUND ... 1

I. Factual Background of the Amended Complaint. ... 1

II. Procedural History. ... 2

III. Overview of Settlement Terms ... 3

ARGUMENT ... 3

I. Class Counsel's Request for Fees of 25% of the Settlement Fund is Reasonable. ... 4

II. The Factors Support a Fee Award of 25% of the Settlement Fund. ... 5

A. The Size of the Fund and The Number of Persons Benefitted Supports the Requested Fee Award. ... 5

B. The Absence of Any Objection Supports the Fee Award. ... 6

C. The Skill and Efficiency of Class Counsel Supports the Fee Award. ... 6

D. The Complexity and Duration of Litigation Favors the Fee Request. ... 8

E. The Risk of Non-Payment Supports the Requested Fee. ... 9

F. The Time Expended Supports the Requested Fee. ... 10

G. The Requested Fee is *Less Than* Awards in Similar Cases. ... 11

H. Public Policy Considerations Support the Requested Award. ... 12

III. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ... 13

A. Class Counsel's Rates Are Within the Prevailing Market Rate ... 14

B. The Hours Expended By Miller's Counsel Were Reasonable. ... 17

C. The Resulting Lodestar Multiplier is Reasonable. ... 18

IV. Class Counsel Is Entitled to Reimbursement of Their Modest Expenses. ... 19

V. The Court Should Approve the Settlement Administration Expenses. ... 20

CONCLUSION ... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 226 (2d Cir. 1987)....17

*Amos v. PPG Indus., Inc.*,
No. 2:05-CV-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ....14

*Ark. Tchr. Ret. Sys. v. State Street Bank & Trust Co.*,
513 F.Supp.3d 202 (D. Mass. 2021) ....15

*Bezdek v. Vibram USA Inc.*,
79 F.Supp.3d 324 (D. Mass. 2015) .... *passim*

*Bilewicz v. FMR, LLC*,
No. 13-10636, 2014 WL 8332137 (D. Mass. Oct. 15, 2014) ....5, 12

*BioPoint, Inc. v. Dickhaut*,
No. CV 20-10118-RGS, 2023 WL 4471971 (D. Mass. July 11, 2023)....15

*Blum v. Stenson*,
465 U.S. 886 (1984)....17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....3

*Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*,
No. 1:13-CV-089 JD, 2015 WL 4464147 (N.D. Ind. July 21, 2015) ....14

*Branch v. F.D.I.C.*,
No. 91 Civ. 1327, 1998 WL 151249 (D. Mass. Mar. 24, 1998) ....8

*Campbell v. Royal Bank Suppl. Exec. Ret. Plan*,
646 F.Supp.3d 629 (E.D. Pa. 2022) ....7

*Cates v. Trs. of Columbia Univ. in City of N.Y.*,
No. 1:16-CV-06524-GBD, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ....14, 17

*Chrapliwy v. Uniroyal, Inc.*,
670 F.2d 760 (7th Cir. 1982) ....16

*Clevenger v. Dillards, Inc.*,
No. C-1-02-558, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) ....12

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D. Mass. 1998) ....................18

*Cunningham v. Wawa, Inc.*,
387 F.Supp.3d 529 (E.D. Pa. 2019) ....................8

*Cunningham v. Wawa, Inc.*,
No. CV 18- 3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021) ....................14

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ....................11

*Feinberg v. T. Rowe Price Grp., Inc.*,
610 F.Supp.3d 758 (D. Md. 2022) ....................14

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st. Cir. 1999) ....................19

*Florin v. Nationsbank of Ga., N.A.*,
60 F.3d 1245 (7th Cir. 1995) ....................8, 17

*Ford v. Takeda Pharmaceuticals U.S.A., Inc.*,
2023 WL 3679031 (D. Mass. 2023) .................... *passim*

*Foster v. Adams & Assocs., Inc.*,
No. 18-CV-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ....................14

*Foster v. Adams and Assoc., Inc.*,
No. 18-cv-02723-JSC, 2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) ....................8

*Frommert v. Conkright*,
223 F.Supp.3d 140 (W.D.N.Y. 2016) ....................7, 8, 14, 16

*Gordan v. Mass. Mutual Life Ins. Co.*,
No. 13-cv-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) .................... *passim*

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
995 F.2d 414 (3d Cir. 1993) ....................18

*Gusman v. Unisys Corp.*,
986 F.2d 1146 (7th Cir. 1993) ....................16

*Hawkins v. Cintas Corp.*,
No. 1:19-cv-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) ....................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ....................17

*Hill v. State St. Corp.*,
No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ....................6, 9, 10, 19

*Holt v. Raytheon Techs. Corp.*,
No. 20-11244-FDS, 2022 WL 6819544 (D. Mass. Oct. 11, 2022)........................................15

*Hurtado v. Rainbow Disposal Co., Inc.*,
No. 817CV01605, 2021 WL 2327858 (C.D. Cal. May 21, 2021)......................................8, 15

*Keenan v. City of Philadelphia*,
983 F.2d 459 (3d Cir. 1992)..........................................................................................18

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004)...............................................................................................7

*Latorraca v. Centennial Techs. Inc.*,
834 F.Supp.2d 25 (D. Mass. 2011) ..................................................................................4

*Loestrin 24 Fe Antitrust Litig.*,
No. 1:13-MD-2472-S-PAS, 2020 WL 5203323 (D.R.I. Sept. 1, 2020) ..................................20

*Loughner v. Univ. of Pittsburgh*,
260 F.3d 173 (3d Cir. 2001)..........................................................................................16

*In re Lupron Mktg. & Sales Practices Litig.,*
No. 01 Civ. 10861, 2005 WL 2006833 (D. Mass. Aug. 17, 2005)...........................................9

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................................9

*Mogck v. Unum Life Ins. Co. of Am.*,
289 F.Supp.2d 1181 (S.D. Cal. 2003)..............................................................................14

*Molloy v. Aetna Life Ins. Co.*,
No. 19-3902, 2024 WL 290283 (E.D. Pa. Jan. 25, 2024).....................................................12

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
No. 19-CV-12608-WGY, 2021 WL 5410505 (D. Mass. Oct. 15, 2021)...................................20

*New Eng. Carpenters Health Benefits Fund v. First Databank*,
No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ..................................................18

*New England Biolabs, Inc. v. Miller*,
No. 1:20-cv-11234-RGS, 2022 WL 20583575 (D. Mass. Oct. 26, 2022) ...................................6

*New England Biolabs, Inc. v. Ralph T. Miller*,
No. 1:20-cv-11234-DJD (D. Mass.) ......................................................................... *passim*

*O'Brien v. Ed Donnelly Enters., Inc.*,
575 F.3d 567 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ....................19

*O'Connor v. Dairy*,
No. 2:14-cv-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) ....................11

*Pfeifer v. Wawa, Inc.*,
No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ....................7, 8, 17

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
630 F.Supp.3d 241 (D. Mass. 2022) ....................4, 11, 18

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass 2005) ....................5, 13

*Roberts v. TJX Cos., Inc.*,
No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ....................11

*Scovil v. FedEx Ground Packaging Sys., Inc.*,
No. 1:10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ....................11

*Severstal Wheeling, Inc. v. WPN Corp.*,
No. 10 Civ. 954 (LTS)(GWG), 2016 WL 1611501 (S.D.N.Y. Apr. 21, 2016) ....................14

*Solari v. Partners HealthCare Sys., Inc.*,
1:19-cv-11475-LTS (D. Mass., May 19, 2021) ....................15

*Spooner v. EEN, Inc.*,
644 F.3d 62 (1st Cir. 2011) ....................13

*Sweda v. Univ. of Pa.*,
No. CV 16-4329, 2021 WL 5907947 (E.D. Pa. Dec. 14, 2021) ....................14

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) ....................3, 4, 13

*Tomazzoli v. Sheedy*,
804 F.2d 93 (7th Cir. 1986) ....................16

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
886 F.Supp. 445 (E.D. Pa. 1995) ....................14

*Venegas v. Glob. Aircraft Serv., Inc.*,
No. 2:14-CV-249-NT, 2017 WL 2730025 (D. Me. June 26, 2017) ....................20

*In re Volkswagen & Audi Warranty Extension Litig.*,
692 F.3d 4 (1st Cir. 2012) ....................4

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F.Supp.3d 155 (D. Mass. 2015) ....................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)...............................................................................................13

*Watson v. Deaconess Waltham Hosp.*,
298 F.3d 102 (1st Cir. 2002) ..............................................................................................8

## INDEX OF EXHIBITS

Declaration of R. Joseph Barton with the following attachment:

Exhibit A: Summary of Fees prepared by Steptoe & Johnson LLP in connection with *Goldman v. Barrent*, Case No. 1:15-cv-09223-PGG (SDNY) and dated September 10, 2018

Declaration of Jonathan M. Feigenbaum

Declaration of Sean K. Collins

Declaration of Daniel Feinberg

Declaration of Joel Fleming

Declaration of Philip J. Gordon

Declaration of Jeffrey Lewis

Declaration of Robert S. Mantell

Declaration of Gregory Y. Porter

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel seeks an order awarding counsel 25% of the Settlement Fund ($7,150,000 before interest) in attorneys' fees and reimbursement of their litigation expenses (currently $16,684.12) and approval of the settlement administrator's expenses. The settlement represents recovery of over 41% of the losses for the Class and an average gross recovery of $89,000 per class member. As this Court recognized on preliminary approval "[t]his is an excellent result compared to other ERISA class settlements approved by other courts in this Circuit" and the average gross recovery per class member "dwarfs the amount recovered in many other approved ERISA class actions." As Class Counsel's request for 25% of the settlement fund is less than what has been awarded in other ERISA actions in this District and 25% is the benchmark for awards from a common fund class action in this Circuit, this request is reasonable and should be approved. Class Counsel's request for reimbursement of their modest expenses should also be approved.

## BACKGROUND

### I. Factual Background of the Amended Complaint.

Plaintiffs Jackson and Meta are former employees who worked for New England Biolabs ("NEB") for many years, participated New England Biolabs, Inc. Employees' Stock Ownership Plan & Trust, renamed the New England Biolabs, Inc. Non-Voting Stock Ownership Plan (the "Plan"). Doc. No. 31 ¶¶ 6, 7. The assets in the Plan (and in participants' accounts) consisted primarily of NEB stock, stock of Cell Signaling Technology, Inc. ("CST"), and mutual funds. *Id.* ¶ 40. As of August 1, 2019, NEB adopted the Third Amendment to the Plan, which eliminated former employees right to remain invested in NEB stock in the Plan. *Id.* ¶ 53. As a result, the NEB stock in the Plan accounts of Plaintiff and the Class was liquidated. *Id.* ¶¶ 64, 66. The

Complaint challenged the 2019 Amendment and also alleged that the method to establish the price paid for NEB stock in the Plan was procedurally and substantively flawed from at least 2017 through 2019. *Id.* ¶¶ 87-116. As a result, the Complaint alleges that the valuations used to set the price paid for NEB stock in the Plan did not reflect fair market value. *Id.* ¶¶ 104-116. The Complaint explained how the valuations improperly imposed a sizeable and excessive discount for lack of marketability (DLOM) to the detriment of the participants. *Id.*

## II. Procedural History.

Plaintiff Jackson filed suit on September 26, 2023. Doc. No. 1. Plaintiff Meda joined as a plaintiff in the Amended Complaint filed on December 22, 2023. Doc. No. 31. Defendants moved to dismiss on January 29, 2024, which was granted in part and denied in part. Doc. No. 56. The claims challenging the valuation survived, but the court dismissed claims challenging the 2019 Amendment. *Id*. On April 24, 2024, the Parties agreed and the Court approved that any disclosure and discovery materials from *New England Biolabs, Inc. v. Ralph T. Miller*, No. 1:20-cv-11234-DJD (D. Mass.) would be deemed to be produced in this litigation. Doc. No. 62, 63.

After Defendants agreed to provide certain additional materials that Plaintiff's counsel believed were necessary to conduct settlement discussions, including valuations and class data, the Parties agreed to mediate. Doc. No. 88-2 (Barton Decl.) ¶ 9; *See* Doc. No. 79. The case was stayed during the mediation through February 14, 2025. Doc. No. 68, 71, 73, 76, 78, 82. During that time, Class Counsel and their clients attended a mediation with Robert Meyer of JAMS on November 1, 2024 and continued negotiations until a settlement in principle was reached on February 14, 2025. Doc. No. 88-2 (Barton Decl.) ¶¶ 9-10. As shown by the multiple requests for continued stays, the negotiations over the terms were complicated. The parties reached a formal settlement agreement in April 2025. Doc. No. 88-3.

## III. Overview of Settlement Terms

The Settlement Agreement requires Defendants to pay $7,150,000. Doc. No. 3 (Agmt.) § III.1. The Net Settlement Amount (i.e., the amount less court-approved attorneys' fees, expenses and service awards), will be distributed to Class Members through the Plan to preserve tax-favored treatment of these monies. *Id*. § IV.4. Defendants will pay all settlement administration costs following transfer of the Net Settlement Fund to the Plan. *Id*. § IV.6. The Settlement represents a gross recovery of 41.8% of the losses to NEB stock based on the surviving class claims. Doc. No. 88-2 (Barton Decl.) ¶ 7. As this Court recognized on preliminary approval, on a percentage of recovery basis, "[t]his is an excellent result compared to other ERISA class settlements approved by other courts in this Circuit." Doc. No. 94 ¶ 12. Indeed, the average gross recovery of $89,000 per class member "dwarfs the amount recovered in many other approved ERISA class actions." Doc. No. 94 ¶ 13. This excellent result for the Class was achieved as a result of the efforts of Class Counsel who have significant experience litigating these types of cases.

## ARGUMENT

The United States Supreme Court "has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). There are two methods for calculating attorneys' fees under a class action common fund recovery: the percentage of the fund or the lodestar method. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) ("*In re Thirteen Appeals*"). The First Circuit has found that the percentage of the fund is the more appropriate measure to use. *Id.* Class Counsel's request for fees amounting to 25% of

the Settlement Fund (plus their modest expenses) are reasonable under either method.

## I. Class Counsel's Request for Fees of 25% of the Settlement Fund is Reasonable.

In the First Circuit, the percentage of fund method of awarding attorneys' fees applies "where attorneys seek compensation from a discernable pot of money won by the plaintiffs." *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 16 (1st Cir. 2012). In a complex class action where a common fund has been created due to class counsel's legal services, the preferred method to award attorneys' fees is the "percentage of fund (POF) method[.]" *In re Thirteen Appeals,* 56 F.3d at 306-08. "In complex litigation—and common fund cases, by and large, tend to be complex—the POF [percentage of fund] approach is often less burdensome to administer than the lodestar method." *Id.* at 307. Rather than reviewing voluminous time records, "the POF method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." *Id.* (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

Courts in this Circuit commonly award fees between 25% and 30%. *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F.Supp.3d 241, 245 (D. Mass. 2022). Sometimes the recovery is greater. *Id.* Indeed, 25% is considered "the benchmark," *Id.*; *see Latorraca v. Centennial Techs. Inc.,* 834 F.Supp.2d 25, 27 (D. Mass. 2011). As a result, a request by class counsel "for 25% of the settlement fund in fees falls squarely within what is recognized in this circuit as the range of reasonable POF amounts." *Bezdek v. Vibram USA Inc.,* 79 F.Supp.3d 324, 350 (D. Mass. 2015) (awarding 25% out of a $3.75 million class settlement). Recognizing the complexity of ERISA and the expertise required for ERISA cases, courts in this District have approved awards of one-third in a number of ERISA class action settlements. *Ford v. Takeda Pharmaceuticals U.S.A., Inc.*, 2023 WL 3679031, at *3 (D. Mass. 2023) (awarding one-third of

$22 million common fund as attorneys' fees in ERISA class action); *Bilewicz v. FMR, LLC*, No. 13-10636, 2014 WL 8332137, at *6 (awarding one-third of $12 million settlement as attorneys' fees in ERISA class action) (D. Mass. Oct. 15, 2014). Here, Plaintiff's request for 25% of the $7.15 million settlement fund falls squarely within a reasonable range.

## II. The Factors Support a Fee Award of 25% of the Settlement Fund.

The First Circuit has not set forth a list of factors to consider, but in determining the reasonableness of class counsel's fee award in a common fund case, courts consider the following factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections relative to the size of the settlement class; (3) the skill and efficiency of Class Counsel; (4) the complexity and duration of the litigation; (5) the financial risks of nonpayment taken on by Class Counsel; (6) the time devoted to the case by Class Counsel; and (7) the awards in similar cases. *Ford*, 2023 WL 3679031, at *3 (citing and applying these factors in an ERISA class settlement); *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85−89 (D. Mass 2005) (citing cases from the Second and Third Circuits as the source of these factors). All of these factors support Class Counsel's fee request of 25%.

### A. The Size of the Fund and The Number of Persons Benefitted Supports the Requested Fee Award.

The Settlement requires Defendants to pay $7,150,000.00, which represents a gross recovery of approximately 41.8% of the losses to NEB stock based on the surviving class claims (and applying Plaintiff's expert's revised DLOM). Doc. No. 88-2 (Barton Decl.) ¶ 7. As this Court recognized on preliminary approval, on a percentage of recovery basis, "[t]his is an excellent result compared to other ERISA class settlements approved by other courts in this Circuit." Doc. No. 94 ¶ 12 (comparing and citing cases).

The average gross recovery of more than $89,000 per class member "dwarfs the amount

recovered in many other approved ERISA class actions." Doc. No. 94 ¶ 13; *see New England Biolabs, Inc. v. Miller,* No. 1:20-cv-11234-RGS, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022) (finding same for recovery of $11,000 per class member). For example, another session in this District awarded attorneys' fees of one-third of a $22 million fund, which would be divided among 38,199 class members, with an average gross recovery of just $575.76 per class member. *Ford*, 2023 WL 3679031, at *1; *see Gordan v. Mass. Mutual Life Ins. Co.,* No. 13-cv-30184-MAP, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (awarding one-third of $30.9 million to be divided among 32,500 class members or average gross recovery was $950.76).

Here the recovery for the members is substantial in terms of both the aggregate amount and, most importantly, on a per class member basis. Thus, the significant benefit provided to these class members favors the requested award of fees.

### B. The Absence of Any Objection Supports the Fee Award.

The absence of objections by class members either to the settlement or the amount of attorneys' fees sought supports approval of class counsel's requested fee. *Ford,* 2023 WL 3679031, at *1 (finding lack of objection to settlement or fees supported counsel's fee request for one-third in ERISA class action); *Gordan*, 2016 WL 11272044, at *2 (finding only 2 objectors to settlement, but not to requested fee, supported counsel's fee request for one-third in ERISA class action). Here, there have been no objections filed to the settlement or the fees to date. Thus, this supports the requested fee.

### C. The Skill and Efficiency of Class Counsel Supports the Fee Award.

This factor considers whether plaintiffs' counsel's "experience and expertise contributed to the achievement of the [s]ettlement." *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015); *Bezdek*, 79 F.Supp.3d at 350 (finding the skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class

action lawsuits weighed in favor of approving a 25% common fund fee). "[I]t is well-recognized that 'ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation'" and there are a "limited number of attorneys who have significant experience handling ERISA matters" on behalf of participants. *Campbell v. Royal Bank Suppl. Exec. Ret. Plan*, 646 F.Supp.3d 629, 644–45 (E.D. Pa. 2022); *Frommert v. Conkright,* 223 F.Supp.3d 140, 151 (W.D.N.Y. 2016) (finding ERISA class action required special expertise and "it was reasonable … to use out-of-district counsel, and to apply hourly rates beyond the forum"). There is sparse jurisprudence in this Circuit about ERISA fiduciary duty claims. *LaLonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004). Despite additional district court decisions involving ERISA fiduciary breach cases, binding precedent is limited and few decisions involve ESOPs in the First Circuit. Thus, ERISA litigation generally and ESOP cases specifically are fields for which the attorneys command top rates.

In a case with similar claims as this one, another court approved Mr. Barton's rates were reasonable based on the complexity of the ERISA claims and his skill and experience. *Pfeifer v. Wawa, Inc.,* No. 16-497, 2018 WL 4203880, at *14 (E.D. Pa. Aug. 31, 2018). This Court previously recognized that Mr. Barton and Mr. Feigenbaum have "extensive experience litigating ERISA class actions." Doc. No. 94 ¶ 2(d) (quoting *Miller*, 2022 WL 20583575, at *2). Mr. Barton has been appointed class counsel in numerous ERISA class actions in the last 24 years, including numerous cases involving employer stock valuation issues, and has been lead trial counsel in five ERISA actions, including three involving valuation issues concerning employer stock in ERISA plans. Barton Decl. (Doc.No. 87-2) ¶ 3, 5-7. Mr. Feigenbaum has been appointed class counsel in numerous ERISA 401(k) suits in this District. Feigenbaum Decl. (Doc.No. 87-3) ¶ 45-49. Courts across the country have repeatedly recognized that Mr.

Barton has "substantial experience with both class actions and ERISA litigation" and noted that "performance" by him and his firm has "confirm[ed] their competence." *Cunningham v. Wawa, Inc.,* 387 F.Supp.3d 529, 539 (E.D. Pa. 2019); *Hurtado v. Rainbow Disposal Co., Inc.,* No. 817CV01605, 2021 WL 2327858, at *5 (C.D. Cal. May 21, 2021) (recognizing Mr. Barton as "class counsel [who] provided skillful, quality work"). Mr. Feigenbaum has more than 30 years of experience litigating a variety of ERISA actions including a number of ERISA class actions. Thus, their skills and experience in this complex area of law support the requested fee.

**D. The Complexity and Duration of Litigation Favors the Fee Request.**

Courts repeatedly recognize that ERISA cases are "enormously complicated." *Watson v. Deaconess Waltham Hosp*., 298 F.3d 102, 109 (1st Cir. 2002); *see Conkright*, 559 U.S. at 509 (ERISA "is an 'enormously complex and detailed statute,'" and many ERISA matters also involve facts that are "exceedingly complicated"); *Branch v. F.D.I.C.*, No. 91 Civ. 1327, 1998 WL 151249, at *4 (D. Mass. Mar. 24, 1998) (recognizing complexity of "ERISA law" in awarding fees). While ERISA actions generally are "notoriously complex," "ESOP cases are often cited as the most complex of ERISA cases." *Foster v. Adams and Assoc., Inc.,* No. 18-cv-02723-JSC, 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021); *Pfeifer*, 2018 WL 4203880, at *7. As the Seventh Circuit explained 30 years ago in a statement that remains true today: "very few areas of the law are as unsettled and complex as ESOP valuation." *Florin v. Nationsbank of Ga., N.A*., 60 F.3d 1245, 1248 (7th Cir. 1995) (reversing district court's denial of multiplier on attorneys' fee award in ESOP litigation).

Courts in this District have concluded that the complicated nature of ERISA claims, which includes subject matter that is "highly technical," requires discovery facts about "prudent investment practices [and] industry best practices," knowledge about proper "fiduciary practices," and "complex financial matters," which "require[es] the use of multiple experts" and

the overall "difficulty of ERISA litigation" justifies fee awards. *Ford,* 2023 WL 3679031, at *1 (citing other ERISA cases and awarding one-third of fund in ERISA class action); *Gordan,* 2016 WL 11272044, at *3 (awarding one-third of settlement or "3.66 times the lodestar").

The fact that a settlement was reached before formal discovery began does not undermine, but supports the fee award. *See Bezdek*, 79 F.Supp.3d at 350-51 (finding extent of the litigation supported a 25% award where settlement was reached before depositions occurred or a motion for class certification was filed, where parties engaged in discovery that informed the settlement). Here, Class Counsel litigated this case efficiently. After the Court decided the motion to dismiss Class Counsel negotiated the ability to use the discovery from the prior *Miller* case. Doc. No. 61-1 ¶ 5.4. Class Counsel also requested documents – primarily valuation reports—and class data that they knew would be necessary in order to evaluate the claims. Barton Decl. ¶ 10. Class Counsel obtained and used this information and relied on their experience – including familiarity with valuation reports and losses – to analyze the documents and data. *Id.*. While Class Counsel litigated this case efficiently, this case was filed over two years ago, without Class Counsel being compensated. These factors support the requested fee.

**E. The Risk of Non-Payment Supports the Requested Fee.**

Where "substantial risks of non-recovery" existed and Class Counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class," this favorably considers "this contingency risk in awarding attorneys' fees." *Hill*, 2015 WL 127728, at *18 (citing *In re Lupron Mktg. & Sales Practices Litig.*, No. 01 Civ. 10861, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) and *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) (finding a "significant risk of non-payment" supported the fee award)); *see Ford*, 2023 WL 3679031, at *2 (finding the risk of non-payment supported the requested award of one-third of settlement fund

in ERISA class action). "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *Hill*, 2015 WL 127728, at *18

Here, Class Counsel accepted the risk of non-payment by agreeing to take this case on a contingency fee basis and incurring costs. Barton Decl. ¶ 16; Feigenbaum Decl. ¶ 17. Based on their experience, Class Counsel knew that ESOP litigation was both costly and risky. Barton Decl. ¶ 15. As explained on preliminary approval, Class Counsel understood that "Defendants would likely have argued that the Class could not be certified (or some portion of the former employees could not be included)." Doc. No. 88-1 at 10 (citing *Jackson v. New England Biolabs, Inc.,* 729 F.Supp.3d 60, 68 (D. Mass. 2024)). Class Counsel was also aware of numerous ERISA cases, and ESOP cases, where plaintiffs lost at trial, or won at trial but were awarded no monetary relief or had a trial win reversed on appeal. *Id.* at 11. Based on their expertise in this area and their own experience, Class Counsel understood that even successful ERISA cases often take years to resolve. *Id.* at 11-12. Yet, Class Counsel accepted this risk in undertaking this case on a contingency basis. Thus, this factor favors the requested fee award.

**F. The Time Expended Supports the Requested Fee.**

When Class Counsel expends "considerable time" in "[p]rosecuting and settling the claim" that supports the fee request. *Ford,* 2023 WL 3679031, at *2. Here, Class Counsel expended 849.80 hours in litigating this case. Barton Decl. ¶ 8; Feigenbaum ¶ 14. As illustrated by other ERISA cases where counsel expended many more hours, Class Counsel litigated this case efficiently. *E.g.*, *Gordan,* 2016 WL 11272044, at *3. In another ERISA case in this District, in which a settlement before a "motion for class certification," before "the deposition of any witnesses" and before any "summary judgment motion," plaintiffs' counsel expended over 2,492 hours in the case. *Bezdek*, 79 F.Supp.3d at 350. The court found that plaintiffs' counsel had

litigated the case efficiently and approved an award of 25% of the settlement. *Id.* Indeed, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual Complex Lit. § 14.121 (4th ed.). Here, Class Counsel benefited the class by the prior experience learned from the *Miller* case. Class Counsel focused on key documents and data necessary to resolve the case and efficiently used information learned in the *Miller* litigation. *Supra* II.D. Class Counsel should be rewarded, not punished, for efficiently litigating this case.

Additionally, the requested fee will compensate Class Counsel not just for past work "but for time that they will be required to spend administering the settlement going forward also supports their fee request." *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010). Here, Class Counsel will still need to draft the final approval motion, attend the final approval hearing and then oversee the administration of the settlement. Thus, this factor supports the requested fee.

### G. The Requested Fee is *Less Than* Awards in Similar Cases.

As a percentage of the relevant common fund, standard awards in the First Circuit range from 20% at the low end to 33% at the high end. *In re Ranbaxy,* 630 F.Supp.3d at 245. Courts in this Circuit have approved awards of one-third of the settlement fund. *Gordan,* 2016 WL 11272044, at *3 (awarding $10.3 million in fees on $30.9 million recovery); *Roberts v. TJX Cos., Inc.,* No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding one-third of settlement which represented a multiplier of 2 on lodestar); *O'Connor v. Dairy,* No. 2:14-cv-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (awarding one third of settlement after finding that percentage is common in employment cases); *Scovil v. FedEx Ground Packaging Sys., Inc.*, No. 1:10 Civ. 515, 2014 WL 1057079, at *5 (D. Me. Mar.

14, 2014) (citing cases and approving a $1.93 million fee award that was one-third of the settlement). In complex ERISA cases, courts across the country "routinely award attorneys' fees in the amount of one-third of the total settlement fund." *Molloy v. Aetna Life Ins. Co.,* No. 19-3902, 2024 WL 290283, at *6 n.41 (E.D. Pa. Jan. 25, 2024); *see Hawkins v. Cintas Corp.,* No. 1:19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025) (citing cases and awarding one-third of fund). In the most recent published decision in an ERISA class action, another court in this District found that an award of one-third was "identical to other awards" in other ERISA fiduciary breach cases in this District. *Ford*, 2023 WL 3679031, at *3; *Bilewicz,* 2014 WL 8332137, at *6 (awarding one-third of fund in ERISA class action). As Class Counsel seeks only 25% of the fund, which is lower amounts awarded in equally complicated ERISA cases involving fiduciary breaches and prohibited transactions, this supports the requested award.

### H. Public Policy Considerations Support the Requested Award.

Courts in this District also sometimes consider public policy considerations in assessing the reasonableness of a fee award. *Bilewic,* 2014 WL 8332137, at *6. As another court explained in awarding a 29% of the settlement fund in an ERISA class action "there is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *Clevenger v. Dillards, Inc.,* No. C-1-02-558, 2007 WL 764291, at *2 (S.D. Ohio Mar. 9, 2007) "Adequate compensatory fee awards in ERISA class actions promote private enforcement of, and compliance with, ERISA." *Id.* Protecting retirement funds of workers is of genuine public interest and thus supports a fully compensatory percentage of the fund fee award. *Id.* In this case, the efforts of Class Counsel secured these additional amounts of retirement benefits for these Plan participants. But for the expertise of Class Counsel, this litigation and this settlement would not have been achieved. As

Class Counsel undertook this litigation with significant risk, a reasonable fee that is in line with the benchmark in this Circuit is appropriate.

**III. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee**

The First Circuit does not require a court to cross-check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee. *In re Thirteen Appeals*, 56 F.3d at 307. While the First Circuit favors the percentage of the fund to award attorneys' fees from a common fund, the First Circuit allows the lodestar method. *Id.* In doing so, however, the First Circuit, explained that the percentage of fund approach offers distinctive advantages over the lodestar method: (1) it is less burdensome to administer; (2) it reduces the possibility of collateral disputes; (3) it enhances the efficiency throughout the litigation; (4) it is less taxing on judicial resources; and (5) it better approximates the workings of the marketplace. *Id.* at 307. As the Second Circuit explained, the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 121 (2d Cir. 2005).

A lodestar analysis may still be performed as simply a cross-check to ensure that the percentage award is fair and reasonable. *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F.Supp.3d 155, 165 (D. Mass. 2015) (explaining multipliers are an accepted means of enhancing a lodestar to appropriately reflect, for example, the scale of the results achieved by the prevailing counsel or the risks counsel took in pursuing contingent fees). Under the lodestar method, the court "determine[s] the number of hours reasonably expended multiplied by a reasonable hourly rate." *Relafen,* 231 F.R.D. at 68; *see Spooner v. EEN, Inc.,* 644 F.3d 62, 68 (1st Cir. 2011). Once that calculation is performed, a multiplier may be applied to compensate counsel for the risk of

non-payment and the results achieved. *Ford*, 2023 WL 3679031, at *2 (finding a 2.41 multiplier appropriate in a ERISA class action).

### A. Class Counsel's Rates Are Within the Prevailing Market Rate

Complex cases under ERISA, such as this one, "demand[] a quality of service for which relatively expensive representation is to be expected." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F.Supp. 445, 477 (E.D. Pa. 1995). "[C]ourts have repeatedly recognized [that] complex ERISA class action litigation, such as this, involves a national market." *Feinberg v. T. Rowe Price Grp., Inc.,* 610 F.Supp.3d 758, 772 (D. Md. 2022) (citing cases); *Cates v. Trs. of Columbia Univ. in City of N.Y.,* No. 1:16-CV-06524-GBD, 2021 WL 4847890, at *3 (S.D.N.Y. Oct. 18, 2021) (same).[1] That particularly applies when, as here, opposing counsel is a "national firm with ERISA expertise." *Sweda v. Univ. of Pa.,* No. CV 16-4329, 2021 WL 5907947, at *7 (E.D. Pa. Dec. 14, 2021). "Because ERISA cases involve a national standard," declarations of attorneys from other districts practicing ERISA should be considered. *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1191 (S.D. Cal. 2003). And the relevant hourly rates are not necessarily those from this district. *Frommert*, 223 F.Supp.3d at 151; *Severstal Wheeling, Inc. v. WPN Corp.,* No. 10 Civ. 954 (LTS)(GWG), 2016 WL 1611501, at *4 (S.D.N.Y. Apr. 21, 2016).

Other courts have recognized the ERISA expertise of Class Counsel and found their hourly rates consistent with the national ERISA market. *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL 425559, at *9 (N.D. Cal. Feb. 11, 2022) (approving Barton's then hourly rate in ESOP case); *Cunningham v. Wawa, Inc.*, No. CV 18- 3355, 2021 WL 1626482, at

[1] *See also Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2015 WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) ("In ascertaining the proper 'community,' district courts may look to national markets, an area of specialization, or any other market they believe is appropriate"); *Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*, No. 1:13-CV-089 JD, 2015 WL 4464147, at *9 (N.D. Ind. July 21, 2015) ("ERISA is a specialized field with a limited number of attorneys. . . there is a national market for the services of those attorneys.").

*8 (E.D. Pa. Apr. 21, 2021) (same); *Hurtado v. Rainbow Disposal Co.*, No. 17-01605 JLS DFM, 2021 WL 2327858, at *6 (C.D. Cal. May 21, 2021) (same). Other ERISA attorneys representing participants confirm Class Counsel's rates are in line, and in fact lower than those of other attorneys litigating similar ERISA cases. Feinberg Decl. ¶ 13; Lewis Decl. ¶ 19; Porter Decl. ¶ 6.

Class Counsel's rates are consistent with the local market. In a 2023 decision approving attorneys' fees in an ERISA class action, another court in this District found that the reasonable hourly rate for attorneys handling complex ERISA class actions were as follows: "$1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14 years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and law clerks." *Ford,* 2023 WL 3679031, at *2 (finding these rates reasonable and approving fees); *Ark. Tchr. Ret. Sys. v. State Street Bank & Trust Co.*, 513 F.Supp.3d 202, 211 (D. Mass. 2021) (awarding up to $1,000/hr). Using those 2023 (without any adjustment for inflation) would translate into a $1,370 rate for Mr. Feigenbaum (with more than 30 years of experience)[2] and at least $1,165 rate (if not $1,370) for Mr. Barton who has nearly 25 years of experience. This is also consistent with a decision by this Court which found rates ranging of $495 for first year associate to $956 for a partner with 30+ years of experience were "comparable to, if not lower than, those charged by similar commercial law firms in the Boston area." *BioPoint, Inc. v. Dickhaut*, No. CV 20-10118-RGS, 2023 WL 4471971, at *1 (D. Mass. July 11, 2023). That the rates are consistent with the forum rates is buttressed by the

[2] Mr. Feigenbaum's rate is consistent with the local market as he not only practices here, but his rates have been approved by courts in this District. *Holt v. Raytheon Techs. Corp.*, No. 20-11244-FDS, 2022 WL 6819544, at *5 (D. Mass. Oct. 11, 2022) (approving Feigenbaum's then rate of $700/hour in ERISA pension case); *Solari v. Partners HealthCare Sys., Inc.*, 1:19-cv-11475-LTS (D. Mass., May 19, 2021) (Doc. No. 54) (awarding fees at Feigenbaum's then-rate of $700 per hour in ERISA long-term disability case). His rate is also supported by the declarations of Collins, Gordon, and Mantell.

declaration from Joel Fleming. Fleming Decl. ¶ 7-9.

An opposing counsel who charges similar rates supports the reasonableness of those charged by the moving party. *Frommert*, 2016 WL 6093998, at *2 (finding defense counsel rates relevant to determine reasonableness of plaintiffs' counsel rates); *see Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) (same). While Class Counsel could not locate the rates of the particular attorneys representing Defendants, in 2018 Defendants' counsel Steptoe & Johnson charged $875/hr for a partner who graduated in 2002 and $680/hr for a class of 2013 associate. Barton Decl. Ex. A. The partner's rates were "the minimum" that could be charged without permission from Steptoe's management committee. *Id.* These rates – when adjusted for inflation – compare favorably to Class Counsel's 2025 rates: The $995/hr for Mr. Barton (2000 law grad), the $665/hr for Mr. Downes and the $900/hr for Mr. Feigenbaum (1984 law grad). [3]

Finally, the rates that counsel charge their paying clients is evidence of the appropriate market value of their services. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (an attorney's usual billing rate, though not dispositive, is "the starting point in ascertaining a reasonable hourly rate"); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm."). These actual rates are the best evidence of what the market will bear, as compared to a "rate devised by the court" because "[l]awyers do not come from cookie cutters"; rather, "[c]lients are willing to pay more, per hour, for . . . better lawyers." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Here, Class Counsel have clients who pay their then-customary hourly rates. Barton Decl. ¶ 13; Feigenbaum Decl. ¶ 16.

[3] *See also* Natalie Rodriguez, Meet the $2,000 an Hour Attorney, LAW360 (June 11, 2015), available at http://www.law360.com/articles/804421 (reporting 10 years ago that corporate clients were paying partners $1,800 to $2,000 per hour, after discounts.").

In short, Class Counsel's rates are reasonable when compared to the national market, the local market, the rates charged by opposing counsel, and what paying clients are charged.

**B. The Hours Expended By Miller's Counsel Were Reasonable.**

When a party "has obtained excellent results" the attorney fee should normally "encompass all hours reasonably expended on [the] litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In analyzing reasonableness of the hours, one factor is "the complexity of the issues." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987); *see Blum v. Stenson,* 465 U.S. 886, 898 (1984) (explaining complexity of issues will be reflected in the number of hours). "ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Pfeifer*, 2018 WL 4203880, at *7; *Florin.,* 60 F.3d at 1248 (recognizing "unsettled and complex" area of ESOP valuation in evaluating fee award). Essential to the Class claim was whether the privately-held stock in the Plan had been properly valued. This case proceeded expeditiously and by the time settlement was reached, Class Counsel had received the fact discovery necessary to make that assessment. Barton Decl. ¶ 10. The hours were reasonably incurred in light of the work required. *Id*. These hours are far fewer than those in other ERISA fiduciary duty class actions that settled before trial. *Gordan,* 2016 WL 11272044, at *3 (noting that class counsel spent 3,485.90 hours of attorney time, along with 251.60 hours of legal assistant time); *Bezdek*, 79 F.Supp.3d at 350 (noting class counsel expended 2,492.25 hours); *Cates,* 2021 WL 4847890, at *4 (15,000 hours). Unlike many law firms, which have numerous attorneys perform various tasks, Class Counsel here concentrated the efforts among a handful of attorneys, which improved efficiency. Barton Decl. ¶ 11. Class Counsel avoided duplication of tasks by having certain attorneys handle specific tasks. *Id.* Class Counsel also delegated tasks to more junior attorneys as evidenced by timekeepers with lower

billing rates accounting for approximately 50% of the hours.[4]

### C. The Resulting Lodestar Multiplier is Reasonable.

When the lodestar method is used in this Circuit to either cross-check the attorneys' fees or award fees from the common fund, a multiplier is often appropriate. *In re Ranbaxy*, 630 F.Supp.3d at 246. The typical range of the lodestar multiplier in this District fall between one and four, although there is significant variation. *Id.* (citing *In re Relafen Antitrust Litig.,* 231 F.R.D. at 82). In the First Circuit, the mean multiplier in common fund cases has been 2.4. *Id.* (citing Theodore Eisenberg et al., *Attorneys' Fees in Class Actions*: 2009-2013). Multipliers of more than 8 times lodestar have been awarded in this District. *New Eng. Carpenters Health Benefits Fund v. First Databank,* No. 05-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding a fee representing a multiplier of approximately 8.3 times the lodestar); *Conley v. Sears, Roebuck & Co.,* 222 B.R. 181, 182 (D. Mass. 1998) (approving attorneys' fees that would constitute a lodestar multiplier of 8.9). In ERISA fiduciary breach class action settlements in this District, courts have approved lodestar multipliers of 2.41 and 3.66 times lodestar. *Ford,* 2023 WL 3679031, at *2 (awarding class counsel $7.2 million, which represented a multiplier of 2.41 of lodestar); *Gordan,* 2016 WL 11272044, at *3 (awarding class counsel $10.3 million, which was "3.66 times the lodestar" and finding that amount "within a range approved by, numerous other courts."). Here, Class Counsel's requested award of 25% of the settlement fund, which would be approximately $1,787,500.00, results in a multiplier of 2.7 based on lodestar to date (which will be less once Class Counsel completes additional required work).[5] As this is in

---

[4] Class Counsel has submitted summaries of the lodestar by timekeeper but will submit detailed records upon request.

[5] The lodestar multiplier is 2.5 if some hours from the prior *Miller* litigation are considered. Indeed, court should consider fees that were "reasonably expended to advance the litigation," which may include fees accrued in prior litigation. *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) (cleaned up); *Keenan v. City of Philadelphia*,

line with a lodestar multiplier in similar cases, an award of 25% of the settlement is appropriate.

## IV. Class Counsel Is Entitled to Reimbursement of Their Modest Expenses.

"[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st. Cir. 1999). Expenses for "mediation, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings" are typically reimburse to class counsel from settlement funds. *Bezdek*, 79 F.Supp.3d at 352; *Hill*, 2015 WL 127728, at *21 (approving expenses for "experts, creating and maintaining an electronic database for review of documents, and conducting online legal and factual research, as well as for court fees, court reporters, out-of-town travel, and copying costs").

Class Counsel seek reimbursement of $16,684.12 expenses incurred to date that were necessarily incurred in the course of this litigation and ordinarily charged to paying clients. Barton Decl. ¶ 20; Feigenbaum Decl. ¶ 20.[6] These consist of filing fees, postage costs, copying charges, process server fees, costs of maintaining electronic databases for e-discovery, expenses for travel to and from mediation and expected travel to the final approval hearing, costs of accessing electronic databases such as PACER, and the amount paid to the mediator. Barton Decl. ¶ 20; Feigenbaum Decl. ¶ 20. As illustrated by another ERISA cases that was settled at a

---

983 F.2d 459, 474 (3d Cir. 1992) (fees for time spent on related labor arbitration could be recovered because that work was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 576 (6th Cir. 2009) (finding district court abused discretion by failing to award fees incurred in prior decertified collective action), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). For example, at least 42 hours of Mr. Feigenbaum's time from the *Miller* litigation advanced the litigation here. Feigenbaum Decl. ¶¶ 9-11, 15. Crediting those additional hours would result in a lodestar multiplier of 2.5.

[6] As Class Counsel continue to incur costs in this case, Class Counsel will update the amount prior to the Final Approval Hearing.

similar procedure posture, the amounts sought by Class Counsel are modest. *Bezdek*, 79 F.Supp.3d at 351 (approving expenses of $61,674.44 for case that settled before class certification and before depositions). Thus, these modest expenses should be approved.

## V. The Court Should Approve the Settlement Administration Expenses.

Class Counsel also seeks approval of $5,356.00 for expenses related to settlement administration – including distribution of class notice, the maintenance of a settlement website, and other settlement administration expenses (but in no event more than actual expenses incurred). Courts routinely authorize the reimbursement of these expenses from a settlement fund. *E.g. Murray v. Grocery Delivery E-Servs. USA Inc.*, No. 19-CV-12608-WGY, 2021 WL 5410505, at *3 (D. Mass. Oct. 15, 2021); *Loestrin 24 Fe Antitrust Litig.*, No. 1:13-MD-2472-S-PAS, 2020 WL 5203323, at *6 & n.16 (D.R.I. Sept. 1, 2020); *Venegas v. Glob. Aircraft Serv., Inc.*, No. 2:14-CV-249-NT, 2017 WL 2730025, at *3 (D. Me. June 26, 2017). Here, these expenses consist of $5,356.00 for the services of Analytics Consulting LLC (corresponding to their not-to-exceed fee commitment). These expenses are all reasonable and in line with the customary amounts charged for similar services, and Analytics Consulting LLC was appointed by the Court as Settlement Administrator only after a competitive bidding process in which it submitted the lowest-priced bid for settlement administration services. Doc. Nos. 93-4, 93-5, 94.

## CONCLUSION

For the foregoing reasons, Class Counsel's request for attorneys' fees and expenses should be granted.

Dated: June 27, 2025

Respectfully submitted,

______________________

R. Joseph Barton (admitted *pro hac vice*)
THE BARTON FIRM LLP
1633 Connecticut Ave. NW Ste. 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@thebartonfirm.com

Jonathan M. Feigenbaum, Esq.
BBO# 546686
184 High Street, Suite 503
Boston, MA 02110
Tel. No.: (617) 357-9700
Fax No.: (617) 227-2843
Email: jonathan@erisaattorneys.com

*Counsel for Plaintiffs Melissa Jackson and Marta Meda*

**Certificate of Service**

I hereby certify that on June 27, 2025, this document, filed through the Court's ECF system, will be sent electronically by the ECF system to the registered participants identified on the Notice of Electronic Filing.

Ming Siegel